Case 25-03316   Document 49   Filed in TXSB on 01/07/26   Page 1 of 16

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

January 07, 2026

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 24-90586** |
| **H-FOOD HOLDINGS, LLC,** *et* | § | |
| *al.,* | § | **CHAPTER 11** |
| | § | |
| Debtors. | § | |
| | § | |
| **HEARTHSIDE FOOD** | § | |
| **SOLUTIONS, LLC,** *et al.,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 25-3316** |
| | § | |
| **LOF 3333, LLC,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT LOF 3333, LLC'S MOTION TO DISMISS THE AMENDED COMPLAINT

This matter comes before the Court on the motion of Defendant LOF 3333, LLC ("LOF" or "Defendant") to dismiss Plaintiff Hearthside Food Solutions, LLC's ("Hearthside" or "Plaintiff") Amended Complaint.[1]  For the reasons described below, Defendant's Motion to Dismiss the Amended Complaint for Declaratory and Other Relief Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is denied in part and granted in part.

---

[1] ECF No. 42.  The Court had previously dismissed Plaintiff's Complaint with leave to replead. *See* ECF No. 32.

1 / 16

## BACKGROUND

On May 31, 2017, Peacock Engineering Company, LLC ("Peacock") entered into a lease agreement with landlord LSREF4 Turtle, LLC, predecessor in interest to Defendant LOF.[2]  The lease was for an office space on the eighth floor of 3333 Finley Road, Downers Grove, Illinois 60515.[3]  Later, in 2018, Hearthside acquired Peacock and succeeded as the tenant under the Office Lease Agreement.[4]

On November 22, 2024, Hearthside and other affiliated Debtors (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United State Bankruptcy Code.[5]  On February 28, 2025, the Debtors filed their Third Amended Chapter 11 Plan (the "Plan").[6]  The Plan provided that each Executory Contract and Unexpired Lease was to be assumed and assigned to the Reorganized Debtor other than those contracts or leases identified in the Rejection Schedule, those already rejected, those pending rejection through a rejection motion, and those subject to a rejection motion after the Plan Effective Date.[7]

As alleged by Hearthside, it determined that it would be in the best interest of Hearthside and its creditors to reject the lease agreement with LOF and move the Debtors' corporate headquarters to a smaller and more economical location, unless LOF would be willing to agree to significant concessions on certain key terms of the parties' lease agreement.[8]

As further alleged by Hearthside, "On March 6, 2025, the Thursday before the scheduled hearing to confirm the Debtors' plan of reorganization on March 10, 2025, LOF approached Hearthside and

---

[2] ECF 42-1 at 1; ECF 42 at 4.
[3] ECF 42-1 at 1.
[4] ECF 37 at 4.
[5] Case No. 24-90586, ECF No. 1.
[6] Case No. 24-90586, ECF No. 553.
[7] Case No. 24-90586, ECF No. 553 at 39.
[8] ECF No. 37 at 2.

asked for one last chance to reach agreement on new terms.  The parties exchanged terms quickly— particularly given the time pressure created by the requirement of 11 U.S.C. § 365(d)(4)(A) that a debtor assume or reject an unexpired lease of real property by the date of the entry of an order confirming a plan—and entered into a Letter of Intent on March 7, 2025. Hearthside thereafter assumed the lease in the Third Amended Joint Chapter 11 Plan of Reorganization of H-Food Holdings and its Affiliated Debtors (the "Plan") confirmed on March 11, 2025 in reliance on LOF's representations and agreement that it was prepared to amend the existing lease on the terms reflected in the Letter of Intent."[9]

The letter of intent provided that the leased premises would be reduced from 24,031 square feet to 12,704 square feet with the option for Hearthside to adjust the square footage within the first six months of the revision.[10]  Additionally, the rental rate would decrease from $24.50 per square foot to $18.00 per square foot, with certain credits reducing the net rental rate to $16 per square foot.[11]  The letter specifically provided that it was non-binding: "The submission of this proposal does not constitute an offer to lease. A lease shall not be binding and in effect until a lease document has been executed by both parties . . . Tenant and Landlord reserves the right to reject any proposal it receives."[12]

As indicated above, on March 11, 2025, the Court entered an order confirming the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization of H-Food Holdings, LLC and its Affiliated Debtors.[13]  In accordance with the plan, Hearthside assumed the Office Lease Agreement it had with LOF.[14]  The plan provides that "each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other

---

[9] ECF No. 37 at 2 (citation omitted); *see* Case No. 24-90586, ECF No. 611.
[10] ECF No. 37 at 6.
[11] ECF No. 37 at 6.
[12] ECF No. 37 at Exhibit A.
[13] Case No. 24-90586, ECF No. 615.
[14] ECF No. 36 at 6.

agreements that in any manner affect such Executory Contract or Unexpired Lease . . . ."[15]  The plan became effective on March 31, 2025.[16]

Following the effective date, the parties continued to negotiate an amendment to the Office Lease Agreement but never finalized an amended agreement.[17]  Hearthside contends that on April 11, 2025, LOF notified MP Midco Holdings, LLC, a newly formed parent entity of the Reorganized Debtors, that it would reject the proposed lease amendment and rent would be governed by the original Office Lease Agreement.[18]

On April 29, 2025, Hearthside filed its initial complaint in the instant adversary proceeding which was dismissed without prejudice on August 14, 2025.[19]  On September 2, 2025, Hearthside filed its Amended Complaint alleging a claim for fraudulent inducement and seeking damages for excess rent payments and recission of its assumption of the Office Lease Agreement.[20]  In the alternative, Hearthside seeks a declaratory judgment that the assumption of the letter of intent under the Plan obligates LOF to negotiate in good faith to execute an amended Office Lease Agreement consistent with the letter of intent.[21]

LOF filed a Motion to Dismiss the Amended Complaint on October 2, 2025.[22]  In it, LOF asserts that the fraudulent inducement claim in Count I should be dismissed under Rule 12(b)(6) because Hearthside fails to state a claim upon which relief could be granted.[23]  LOF further contends that the Court lacks jurisdiction to grant the

---

[15] Case No. 24-90586, ECF No. 553 at 41.
[16] Case No. 24-90586, ECF No. 680 at 1.
[17] ECF No. 42 at 5.
[18] ECF No. 37 at 8.
[19] ECF No. 1; ECF No. 32.
[20] ECF No. 37 at 9–10.
[21] ECF No. 37 at 11.
[22] ECF No. 42.
[23] ECF No. 42 at 7.

declaratory relief requested in Count II and the claim should be dismissed pursuant to Rule 12(b)(1).[24]

## JURISDICTION

28 U.S.C. § 1334(a) provides the district courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states: "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The parties disagree on whether this Court has jurisdiction to grant the requested declaratory relief in Count II of the Plaintiff's Amended Complaint.[25] However, even if the Court lacks subject matter jurisdiction over Count II, the Court "always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). As it relates to the fraudulent inducement claim in Count I of the Plaintiff's Amended Complaint, the Court has jurisdiction as it is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A), (L), and (O).

## LEGAL STANDARD

Defendant LOF brings this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). FED. R. CIV. P. 12(b)(1), (6). Rules 12(b)(1) and 12(b)(6) are applied in this proceeding pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. FED. R. BANKR. P. 7012(b).

---

[24] ECF No. 42 at 18.
[25] ECF No. 42 at 18; ECF No. 45 at 15.

Rule 12(b)(1) permits the dismissal of a claim for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A party may raise a court's lack of subject matter jurisdiction at any time. *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction has the burden of proof in a Rule 12(b)(1) motion to dismiss. *Id.* Therefore, the Plaintiff bears the burden of proving jurisdiction exists for this Court to issue the declaratory relief requested in Count II.

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Briceno-Belmontes v. Coastal Bend Coll.*, No. 2:20-CV-00114, 2022 U.S. Dist. LEXIS 39354, at *19 (S.D. Tex. Mar. 5, 2022). In deciding a Rule 12(b)(6) motion, the Court must accept all well-plead facts in the plaintiff's motion as true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court should ignore conclusory allegations and instead consider the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). The plausibility standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Southern Scrap Material Co. LLC v. ABC Ins. Co. (In re Southern Scrap Material Co. LLC)*, 541 F.3d 584, 587 (5th Cir. 2008) (citation modified).

The United States Supreme Court explains:

> A pleading that offers "labels and conclusions" or "a
> formulaic recitation of the elements of a cause of action will
> not do." Nor does a complaint suffice if it tenders "naked
> assertion[s]" devoid of "further factual enhancement." To
> survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim
> to relief that is plausible on its face[]" . . . The plausibility
> standard is not akin to a "probability requirement," but it
> asks for more than a sheer possibility that a defendant has
> acted unlawfully. Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it "stops
> short of the line between possibility and plausibility of
> 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a
pleading to contain "a short and plain statement of the claim showing
that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Further, in
alleging fraud like Plaintiff does here, Rule 9(b) requires a party "state
with particularity the circumstances constituting fraud or mistake.
Malice, intent, knowledge, and other conditions of a person's mind may
be alleged generally." FED. R. CIV. P. 9(b). This particularity
requirement generally means a claimant must provide the "who, what,
when, where, and how" of the alleged fraud. *United States ex rel.
Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir.
2005). A claimant pleading fraud must specify the fraudulent
statement, identify who said the statement, state when and where those
statements were made, and explain why the statements were
fraudulent. *Princess Cruise Lines, Ltd. v. Walltopia Adventure USA,
LLC*, No. 4:24-cv-745, 2025 U.S. Dist. LEXIS 163212, at *5 (E.D. Tex.
Aug. 22, 2025) (citing *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302
F.3d 552, 564–65 (5th Cir. 2002)).

**DISCUSSION**

Defendant LOF brings forth this Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[26]   As to Count I, Defendant contends that Plaintiff's claim for fraudulent inducement should be dismissed because Plaintiff fails to state a claim upon which relief can be granted and the claim is not plead with particularity.[27]   Defendant asserts that Illinois law applies, and Plaintiff failed to plead with particularity any specific or objective manifestations of fraudulent intent sufficient to satisfy the scheme exception required under Illinois law.[28]   As to Count II, Defendant contends the Court lacks subject matter jurisdiction over the declaratory judgment claim because the claim deals with the post-confirmation relations between the two parties.[29]

## I.  Count I – Fraudulent Inducement Claim

Before examining the sufficiency of the pleadings, the Court will first determine which law applies to Plaintiff's fraudulent inducement claim.  Both parties agree there is a conflict between Texas and Illinois law because the two state's laws differ as to the required elements for establishing a fraudulent inducement claim.

Thus, because there is a conflict of laws, the Court must then conduct a choice-of-law analysis to determine what law applies.  *See Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) ("'[I]f the laws of the states do not conflict, then no choice-of-law analysis is necessary,' and we simply apply the law of the forum state.").  Generally, in diversity cases, federal courts apply the choice-of-law rules of the forum state.  *Nat'l Union Fire Ins. Co. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

---

[26] ECF No. 42.
[27] ECF No. 42 at 7.
[28] ECF No. 42 at 7–13.
[29] ECF No. 42 at 18.

In the context of a bankruptcy, however, where the Court sits in federal question rather than diversity jurisdiction, courts are split on whether bankruptcy courts are bound to apply the *Klaxon* choice-of-law rule or may exercise their "independent judgement" and choose the state's substantive law which it deems appropriate. *See In re Kaiser Steel Corp.*, 87 B.R. 154, 157 (Bankr. D. Colo. 1988); *Wilmington Sav. Fund Soc'y v. iHeartCommunications, Inc. (In re iHeartMedia, Inc.)*, 597 B.R. 339, 350 (Bankr. S.D. Tex. 2019). The Fifth Circuit has not determined whether bankruptcy courts should apply the independent judgment approach or the forum state's—here, Texas—choice-of-law rules. *See id.* (citing *In re Mirant*, 675 F.3d 530, 536 (5th Cir. 2012)). It makes no difference here, however, since in Texas tort cases courts apply the "most significant relationship" test which is essentially synonymous with the independent judgment test. *See In re Mirant*, 675 F.3d at 536.

### A.   Choice of Law

Texas choice-of-law rules are in line with the Second Restatement's "most significant relationship" test. *See id.* The Second Restatement of Conflict of Laws provides that in determining the law applicable to an issue, certain contacts should be taken into account including:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (A.L.I. 1971).

Although the parties agree there is a conflict between Texas and Illinois law, they disagree as to what state's law applies. The Defendant contends that Illinois law applies while the Plaintiff asserts Texas law applies. Both parties seem to agree, however, that there are more contacts with Illinois than Texas. In its response, the Plaintiff states:

"Hearthside does not dispute that both Hearthside and LOF are based in Illinois, that the parties' relationship is centered in Illinois, or that LOF's fraudulent representations were made in Illinois."[30]

Plaintiff instead argues that although there are a limited number of contacts with Texas, the significance of those contacts weighs in favor of applying Texas law.[31] *See Cates v. Creamer*, 431 F.3d 456, 464 (5th Cir. 2005) ("We [] evaluate these contacts qualitatively instead of quantitatively."). Plaintiff contends Texas law should apply because the Amended Complaint centers on conduct that took place in Texas, i.e., that LOF manipulated the bankruptcy process by fraudulently inducing Hearthside to assume the Office Lease Agreement. Hearthside's argument, while it may upon a full development of the facts allow the Plaintiff to prevail in the fraudulent inducement claim, is unconvincing on the choice-of-law issue. Plaintiff complains of LOF's fraudulent misrepresentations in the letter of intent. The letter of intent, and the alleged fraudulent misrepresentations within it, were created in Illinois by LOF's agent.[32]  The only contact with Texas is the fact that Hearthside filed its bankruptcy case there. Every contact points toward applying Illinois law. Therefore, this Court finds that Illinois has the most significant relationship to Plaintiff's fraudulent inducement claim and will apply Illinois law in analyzing the sufficiency of the pleadings.[33]

## B.    Sufficiency of Pleadings under Illinois Law

To state a claim for fraud, a plaintiff must allege: "(1) a false statement of material fact; (2) knowledge or belief of the statement's falsity; (3) intent to induce the plaintiff to act or refrain from action on the falsity of the statement; (4) the plaintiff reasonably relied on the false statement; and (5) damage from such reliance." *Bayview Loan Servicing, LLC v. Szpara*, 2015 IL App (2d) 140331, ¶ 34.  In Illinois,

---

[30] ECF No. 45 at 8.
[31] ECF No. 45 at 8.
[32] ECF No. 37 at Exhibit A.
[33] Although Illinois law would cover the interpretation and enforcement of a contract, whether the lease was properly assumed is a question of bankruptcy law.

fraudulent inducement is known as promissory fraud, and it is a disfavored claim in the state. In fact, promissory fraud is generally not actionable in Illinois "unless the promise is a part of a 'scheme' to defraud." *Gen. Elec. Credit Auto Lease, Inc. v. Jankuski*, 177 Ill. App. 3d 380, 384 (1988). A claimant cannot maintain a fraud action based on a fraudulent promise to perform in the future. *Gagnon v. Schickel*, 2012 IL App (1st) 120645983, ¶ 32. A mere breach of contract is not fraud, "and neither a knowledge of inability to perform, nor an intention not to do so, would make the transaction fraudulent." *Miller v. Sutliff*, 241 Ill. 521, 527 (1909).

Illinois case law, however, has not been clear about what constitutes a "scheme to defraud." *See* BRUCE L. OTTLEY, ROGELIO A. LASSO & MICHAEL J. POLELLE, ILLINOIS TORT LAW, § 9.04 (Matthew Bender, 4th ed.). Some courts have found a "scheme" when the fraud persisted over a long period of time in a larger pattern of deception. *Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1354 (7th Cir. 1995). And, "in cases where the false promise or representation of intention or of future conduct is the scheme or device to accomplish the fraud and thereby cheat and defraud another of his property, equity will right the wrong by restoring the parties to the positions they occupied before the fraud was committed." *Roda v. Berko*, 401 Ill. 335, 340 (1948). Courts have even gone as far as stating that the scheme exception has likely swallowed the general rule against claims for promissory fraud. *See Gen. Elec. Credit Auto Lease, Inc.*, 177 Ill. App. 3d at 384.[34]

The Seventh Circuit provides: "[P]romissory fraud is actionable only if either it is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick*, 44 F.3d at 1354. One circumstance of promissory fraud is when a breach happens soon after the promise is

---

[34] This Court declines to read the "scheme" exception out of Illinois law. As the Seventh Circuit explains: "it is not our proper role as a federal court . . . to read 'scheme' out of Illinois law; we must give it some meaning." *Desnick*, 44 F.3d at 1354.

made that the court can infer that the promisor never intended to keep the promise. *Dargo v. Clear Channel Commc'ns., Inc.*, No. 07 C 5026, 2008 U.S. Dist. LEXIS 42117, at *9 (N.D. Ill. May 28, 2008). But plaintiffs do not establish a scheme to defraud by merely alleging that the defendant made the same false representation multiple times or that the defendant never intended to fulfill their promise. *See Sols. Team, Inc. v. Oak St. Health, MSO, LLC*, No. 17-cv-1879, 2019 U.S. Dist. LEXIS 18968, at *16 (N.D. Ill. Feb. 6, 2019).

To survive a motion to dismiss, a claimant must allege the elements of fraud and "point to specific, objective manifestations of fraudulent intent—a scheme or device." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992). Without such "specific, objective manifestations of fraudulent intent" there can be no promissory fraud. *Hollymatic Corp. v. Holly Sys., Inc.*, 620 F. Supp. 1366, 1369 (N.D. Ill. 1985). Additionally, a plaintiff alleging fraud must meet the heightened pleading standard of Rule 9(b) by pleading the "who, what, when, where, and how" of the fraud. *United States ex rel. Williams*, 417 F.3d at 453.

As to Count I of the Amended Complaint, the Court finds that the Plaintiff has stated a plausible claim for relief. When viewed in the light most favorable to the Plaintiff, the complaint contains sufficient facts that point to allegations of Defendant's specific, objective manifestations of fraudulent intent. Plaintiff alleges that days before it was set to reject LOF's lease, LOF approached Plaintiff to negotiate an amendment. Plaintiff alleges that because the parties signed the letter of intent, it was falsely led to believe that LOF would honor their promise to finalize the lease amendment. Plaintiff does not just merely allege that LOF broke their promise, but that LOF used the timing of the bankruptcy confirmation and the letter of intent to fraudulently induce Plaintiff into assuming the lease—since it could have easily rejected the lease. It alleges that soon after confirmation and the effective date, LOF changed course and refused to amend the lease or engage in further negotiations. Altogether, Plaintiff's allegations sufficiently support an inference of

Defendant's fraudulent intent and make it plausible that Plaintiff has a claim for relief under Illinois law.

Furthermore, Defendant contends that Plaintiff failed to plead justifiable reliance because the letter of intent was non-binding.  It argues that Plaintiff could not have reasonably relied on the non-binding document as a guarantee that a lease amendment would be executed.

The Court, however, finds that the Plaintiff sufficiently plead the element of justifiable reliance.  Plaintiff's Amended Complaint alleges that based on the timing and Defendant's representations in the letter of intent, it believed LOF was willing to execute an amended lease on the terms set forth therein.  Plaintiff alleges that it assumed the lease based on these representations and would not have done so without them.  The timing of the bankruptcy proceedings coupled with the timing of the negotiations and the representations in the letter of intent are allegations sufficient to conclude it is plausible Plaintiff justifiably relied on the letter of intent.  Taken together, the unique circumstances alleged indicate the issue of Plaintiff's justifiable reliance is an issue of fact sufficient to proceed to discovery.  If in fact, the Plaintiff is able to prove at trial that LOF provided the letter of intent without any intent of honoring it, this would likely constitute "particularly egregious" facts referenced by the Seventh Circuit.

Further, the Court is satisfied that the Plaintiff has plead with particularity their fraudulent inducement claim against the Defendant, that is, the "who, what, when, where, and how" required for compliance with Rule 9(b).  The Defendant's Motion to Dismiss Count I of the Amended Complaint is denied.

## II.    Count II – Declaratory Judgment Claim

Defendant's Motion to Dismiss contends the Court has no jurisdiction to grant Plaintiff's requested declaratory relief.  In its Amended Complaint, Plaintiff alternatively requests a declaratory judgment "that the assumption of the Letter of Intent under the Plan as part of the unexpired Office Lease Agreement obligates LOF to honor

the terms of the Letter of Intent by negotiating in good faith to execute an amendment to the Office Lease Agreement on terms consistent with the Letter of Intent."[35]  Defendant alleges the Court has no jurisdiction to grant such relief because Plaintiff is in essence seeking post-confirmation enforcement of the letter of intent. Defendant argues that because the declaratory request seeks to affect the post-confirmation relationship between the Reorganized Debtor and LOF, there is no bankruptcy jurisdiction.[36]

The Court has an obligation to determine whether subject-matter jurisdiction exists over a claim.  *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).  The Court's subject matter jurisdiction narrows when a dispute arises post-confirmation.  *See Carnero G&P, L.L.C. v. SN EF Maverick, L.L.C. (In re Sanchez Energy Corp.)*, No. 24-20207, 2025 U.S. App. LEXIS 29743, at *14 (5th Cir. Nov. 13, 2025); *Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001).  The Fifth Circuit has emphasized: "post-confirmation jurisdiction requires a careful evaluation of the connection between a dispute and the plan of reorganization."  *In re Sanchez Energy Corp.*, 2025 U.S. App. LEXIS 29743, at *16.

The Fifth Circuit in *Enron* provided three factors relevant to post-confirmation jurisdiction.  "The first factor is whether the dispute 'principally dealt with post-confirmation relations between the parties,' or instead arose from pre-confirmation conduct. The second is whether the claims were brought before confirmation. The third is whether any 'facts or law deriving from the reorganization or the plan were necessary to the claim.'"  *Natixis Funding Corp. v. GenOn Mid-Atlantic, L.L.C. (In re GenOn Mid-Atlantic Dev., L.L.C.)*, 42 F.4th 523, 534 (5th Cir. 2022) (quoting *In re Enron Corp. Sec.*, 535 F.3d 325, 335 (5th Cir. 2008)).  The Fifth Circuit has explained that some cases can be decided without analyzing the *Craig's Stores* factors.  *See RDNJ Trowbridge v. Chesapeake Energy Corp. (In re Chesapeake Energy Corp.)*, 70 F. 4th 273,

---

[35] ECF No. 37 at 11.
[36] ECF No. 42 at 18.

283 (5th Cir. 2023).  In most of its decisions, the Fifth Circuit has instead focused its analysis on *Craig's* overarching question: "Does the dispute 'pertain to the implementation or execution' of the debtor's reorganization plan?"  *In re GenOn Mid-Atlantic Dev., L.L.C.*, 42 F.4th at 534; *see In re Craig's Stores of Tex., Inc.*, 266 F.3d at 390.

The Court finds that it does not have subject matter jurisdiction to order the relief requested in Count II.  The Amended Complaint makes it clear that the parties' core dispute is not about the assumption of the letter of intent and is instead related to post-confirmation enforcement of the rights Plaintiff believes it has under the letter of intent.[37]  That is, a declaration that LOF is obligated to negotiate a lease amendment.

If instead, the issue was whether the letter of intent was properly assumed at plan confirmation, the Court would have jurisdiction because it would implicate the rights provided to debtors by § 365 to assume or reject contracts.  *See* 11 U.S.C. § 365.  Instead, the pleadings appear to assume the letter of intent was assumed and request the Court enforce the letter of intent by declaring what obligations LOF has under it. The pleadings reflect a post-petition contractual dispute that does not affect plan implementation and execution.[38] Therefore, under the Fifth Circuit's approach to post-confirmation jurisdiction, the Court does not have jurisdiction to grant the declaratory relief requested. [39] *See In re Craig's Stores of Tex., Inc.*, 266 F.3d at 390.

---

[37] Defendant does not contest the Reorganized Debtor is entitled to whatever rights it has under the letter of intent. *See* ECF No. 46 at 9. LOF acknowledged that the letter was signed post-petition, so it is "functionally analogous" to an assumed pre-petition agreement. ECF No. 46 at 9.

[38] In contrast, Count I is a fraudulent inducement claim which, if found, would allow Hearthside to retroactively reject the lease under Federal Rule of Civil Procedure 60(b)(3) and Bankruptcy Rule 9024. This right is provided by the Bankruptcy Code and Rules, so the Court has jurisdiction over Count I.

[39] Plaintiff argues that even if the Court finds it has no "arising in" jurisdiction for Count II, it still "relates to" the bankruptcy because the requested relief could *conceivably* affect the administration of the estate. ECF No. 45 at 18. But, as discussed above, post-confirmation jurisdiction is a narrower standard.  *See In re Craig's Stores of Tex., Inc.*, 266 F.3d at 390.

A party asserting the court's jurisdiction has the burden of proving such jurisdiction. *Ramming v. United States*, 281 F.3d at 161. Because the Plaintiff has failed to meet its burden, the Court grants Defendant's Motion to Dismiss Plaintiff's declaratory judgment claim and Count II is dismissed.

## CONCLUSION

For these reasons, the Court DENIES IN PART and GRANTS IN PART Defendant's Motion to Dismiss Plaintiff's Amendment Complaint. A separate order will issue.

SIGNED 01/07/2026

Alfredo R Pérez
United States Bankruptcy Judge

16 / 16